## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMILIA ISSAKOVA, NATALIE NIEVES, NATALIE MOZAMMEL and JOBED LA POINTE<br><br>Plaintiffs,<br><br>- *against* -<br><br>THE ANTHEM COMPANIES INC. and THE ELEVANCE HEALTH COMPANIES INC.<br><br>Defendants. | CIVIL NO:<br><br>CLASS AND COLLECTIVE ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

TO THE HONORABLE COURT:

NOW COME Plaintiffs EMILIA ISSAKOVA, NATALIE NIEVES, NATALIE MOZAMMEL, and JOBED LA POINTE (collectively "Plaintiffs" or "Named Plaintiffs" or "FLSA Representative" or "Class Representatives") on behalf of themselves and all others similarly situated individuals, by and through their undersigned counsel, NAPOLI SHKOLNIK PLLC, bring this action against Defendants THE ANTHEM COMPANIES INC. and THE ELEVANCE HEALTH COMPANIES INC. (collectively "Defendant") and in support thereof aver the following:

### PRELIMINARY STATEMENT

1.     This is a collective and class action brought by Plaintiffs, on behalf of themselves and putative collective members against Defendant for violations of the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 et seq. ("FLSA"), the New York Labor Law, Article 6 and Article 19, and supporting New York State Department of Labor regulations (collectively "NYLL"). Plaintiffs

seek to recover from Defendant: (1) unpaid wages, including overtime compensation; (2) statutory penalties; (3) liquidated damages; and (4) attorney's fees and costs.

2.    Plaintiffs maintain Defendant misclassified "Network Relations Consultants" as exempt employees and failed to pay them for all hours worked, consistently paying them for 40 hours a week despite the number of hours they actually worked.

3.    While employed by THE ELEVANCE HEALTH COMPANIES INC., Plaintiffs contend that they and other similarly situated "Network Relations Consultant" consistently worked over 40 hours per week without receiving premium overtime pay for all the hours they worked.

## JURISDICTION AND VENUE

4.    Jurisdiction in this Court is proper pursuant to 29 U.S.C. § 216 (b) and 28 U.S.C. § 1331.

5.    This Court also has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over the state law claims asserted, as the state and federal claims derive from a common nucleus of operative fact.

6.    Venue for this action lies within the Southern District of New York, pursuant to 28 U.S.C. § 1391(b), because the events giving rise to this claim occurred in this district.

7.    This Court is empowered to issue a declaratory judgement pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

### THE ELEVANCE HEALTH COMPANIES, INC.

8.    Defendant THE ELEVANCE HEALTH COMPANIES, INC. formerly known as THE ANTHEM COMPANIES INC. is a business corporation operating in New York and

organized under the laws of Indiana with  principal executive office is located at 220 Virginia Avenue Indianapolis, IN 46204, and its address for service of process purposes is c/o  CT Corporation  System,  28 Liberty Street,  New  York,  NY  10005.

9.      Defendant ELEVANCE is registered to conduct business in New York.

10.      Defendant ELEVANCE operates a healthcare enterprise that provides programs and services to uninsured and  underinsured individuals.

11.      At all relevant times, the Defendant ELEVANCE was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and NYLL and the regulations thereunder.

12.      At all relevant times, ELEVANCE is, and has been, "employer" engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the of FLSA, 29 U.S.C. § 203(d).

13.      At all relevant times, the Defendant was an employer that employs four (4) or more "employees" within the meaning of Section 15(a) of the FLSA and Section 215 of the NYLL.

14.      At all relevant times, the work performed by Plaintiffs, and Class Members was directly essential to the business operated by Defendant.

15.      On or around May 5, 2022, ELEVANCE bought INTEGRA MANAGED CARE.

### *Plaintiff EMILIA ISSAKOVA*

16.      Plaintiff EMILIA ISSAKOVA ("ISSAKOVA"), an individual and a citizen of Nassau County, New York.

17.      ISSAKOVA was and still is employed by Defendant ELEVANCE as a "Network Relations Consultant".

18.     ISSAKOVA began working with Integra Managed Care ("Integra") on or around July 2016 as an "Account Manager".

19.     When Integra was bought by Defendant ELEVANCE in or around May 2022, ISSAKOVA's position was renamed as "Network Relations Consultant" and she was reclassified as exempt employee.

20.     ELEVANCE paid ISSAKOVA a base salary that was calculated on the assumption of a 40-hour work week.

21.     Defendant ELEVANCE paid ISSAKOVA for five eight-hour workdays per week, with typical hours scheduled from 8:30 am to 5:00 pm. Issakova was required to report a lunch break from 12:00 to 12:30 p.m., although she did not actually take this break. Despite this schedule, ISSAKOVA was compelled to work an additional three to four hours per day.

22.     For example, throughout her employment, ISSAKOVA was required to visit 5 providers per day.  She would then also have to complete her paperwork and respond to emails before finishing up for the day.

23.     ISSAKOVA was generally too busy completing field visits, meeting with agencies, answering calls and emails and filling out required paperwork to take lunch. As a result, ISSAKOVA regularly worked over 40 hours a week.

24.     Plaintiff ISSAKOVA also attended galas and community events without receiving any form of compensation.

25.     At all times relevant, ISSAKOVA was entitled to receive overtime pay for all hours worked over 40.

26.     At all times relevant, ISSAKOVA was an "employee" as defined by 29 U.S.C. §203(e)(1).

27.     At all times relevant, ISSAKOVA was an "employee" as defined by NYLL §§ 190(2),651(5).

28.     Defendant, however, failed to pay ISSAKOVA overtime wages for those hours worked over 40.

### Plaintiff *NATALIE NIEVES*

29.     Plaintiff NATALIE NIEVES, an individual and a citizen of Bronx County, , New York.

30.     Plaintiff began working with Integra Managed Care in or around 2022.  She was hired as an "Account Manager" and she was an hourly employee.

31.     When Integra was bought by Defendant ELEVANCE in or around May 5, 2022, Plaintiff's position was renamed as "Network Relations Consultant" and unlawfully reclassified as exempt.

32.     Defendant paid NIEVES a base salary that was calculated assuming 40 hours of work each week.

33.     Defendant scheduled NIEVES for five eight-hour days a week: Monday – Friday 9:00 am to 5:00 pm; however, NIEVES worked well beyond these hours.

34.     For example, throughout her employment, she had phone meetings after 5:00 pm. She would then have to complete her regular work for an hour or so before finishing up for the day.

35.     NIEVES was generally too busy meeting with clients and filling out required paperwork to take lunch and be fully relieved of work. As a result, NIEVES regularly worked over 40 hours a week.

36.     At all times relevant, NIEVES was entitled to receive overtime pay for all hours worked over 40.

37.     At all times relevant, NIEVES was an "employee" as defined by 29 U.S.C. §203(e)(1).

38.     At all times relevant, NIEVES was an "employee" as defined by NYLL §§ 190(2),651(5).

39.     Defendant, however, failed to pay NIEVES overtime wages for those hours worked over 40.

### Plaintiff NATALIE MOZAMMEL

40.     Plaintiff NATALIE MOZAMMEL is an individual and a citizen of New York, New York.

41.     MOZAMMEL began working with Integra Managed Care in or around October 2019.  She was hired as an "Account Manager" and she was an hourly employee.

42.     When Integra was bought by Defendant ELEVANCE in or around May 5, 2022, MOZAMMEL's position was renamed as "Network Relations Consultant" and unlawfully reclassified as exempt.

43.     ELEVANCE never paid defendant MOZAMMEL for work performed in excess of 40 hours per week.

44.     MOZAMMEL was forced to work one to four hours more per day.

45.     For example, throughout her employment, MOZAMMEL was required to visit 5 providers per day.  She would then also have to complete her paperwork and respond to emails and calls before finishing up for the day.

46.     For example, throughout her employment, MOZAMMEL had to work between one to four additional hours responding to provider inquiries and/or complaints by phone and email and completing a comprehensive report of the interactions with providers before she could finish up for the day.

47.     MOZAMMEL was generally too busy meeting with clients or responding to their inquiries and complaints and filling out required paperwork to take lunch. As a result, MOZAMMEL regularly worked over 40 hours a week.

48.     At all times relevant, MOZAMMEL was entitled to receive overtime pay for all hours worked over 40.

49.     At all times relevant, MOZAMMEL was an "employee" as defined by 29 U.S.C. §203(e)(1).

50.     At all times relevant, MOZAMMEL was an "employee" as defined by NYLL §§ 190(2), 651(5).

51.     Defendant, however, failed to pay MOZAMMEL overtime wages for those hours worked over 40.


***Plaintiff JOBED LA POINTE***

52.     Plaintiff JOBED LA POINTE ("LA POINTE"), an individual and a citizen of Westchester County, New York.

53.     LA POINTE was and still is employed by Defendant as a "Network Relations Consultant".

54.     Defendant paid LA POINTE a salary that was calculated assuming 40 hours of work each week.

55.    Defendant paid LA POINTE a salary that was calculated assuming 40 hours of work each week.

56.    Defendant scheduled LA POINTE for five eight-hour days a week: Monday – Friday 9:00 am to 5:00 pm, however, LA POINTE worked well beyond these hours.

57.    For example, throughout his employment, he had phone meetings after 5:00 pm. He would then have to complete his regular work for an hour or so before finishing up for the day.

58.    LA POINTE was generally too busy meeting with clients and filling out required paperwork to take lunch and be fully relieved of work.

59.    As a result, LA POINTE regularly worked over 40 hours a week.

60.    At all times relevant, LA POINTE was entitled to receive overtime pay for all hours worked over 40.

61.    At all times relevant, LA POINTE was an "employee" as defined by 29 U.S.C. §203(e)(1).

62.    At all times relevant, LA POINTE was an "employee" as defined by NYLL §§ 190(2),651(5).

63.    Defendant ELEVANCE, however, failed to pay LA POINTE overtime wages for those hours worked over 40.

**STATEMENT OF FACTS COMMON TO NAMED PLAINTIFFS**

64.    Plaintiffs were hired by Integra Managed Care for the Account Manager position as hourly nonexempt employees.

65.    Integra Managed Care, based in New York, was a Medicaid-focused provider specializing in long-term care services for adults with disabilities. It operated across New York

City, Nassau, Suffolk, and Westchester care management through a team of healthcare professionals, including nurses, social workers, and coordinators.

66.    The Anthem Companies Inc. now known as Elevance Health acquired Integra Managed Care on or around May 5, 2022.

67.    In June 2022 Elevance notified plaintiffs that their position as Account Managers was being renamed as Network Relations Consultants and they were being reclassified as exempt employees.

68.    By misclassifying Plaintiffs as exempt employees, Defendant wrongfully deprived Plaintiffs of considerable owed overtime compensation.

69.    Despite working excessive overtime, Plaintiffs were compensated at a bi-weekly fixed rate regardless of overtime hours worked.

70.    Thereafter, Defendant required Plaintiffs to perform additional work duties on weekends or otherwise after working hours without any additional pay.

71.    Defendant underpaid its employees and avoided paying overtime while broadening Plaintiffs' duties and assigning projects that were impossible to achieve within a 40-hour working week.

72.    In addition to conducting at least 5 provider visits per day in the field, Plaintiffs were required to attend internal virtual meetings, answer calls from providers, and respond to hundreds of emails daily. As a result, Plaintiffs routinely worked approximately between 10 to 14 hours each day.

73.    Because it was not possible to meet the job responsibilities during their regular scheduled hours, Plaintiffs were forced to work beyond their regular shifts. These after-hours activities included, but were not limited to, responding to provider inquiries via calls and emails,

conducting provider visits, attending events, and completing and submitting detailed reports and timesheets.

74.    Defendant required Plaintiffs to attend events and galas in the evenings and the weekends without overtime pay.

75.    In addition to clocking in and out every day, Plaintiffs were also required to submit timesheets detailing their hours worked.

76.    Plaintiffs do not exercise discretion and independent judgment with respect to matters of significance.

77.    Despite the fact that as alleged above, Plaintiffs performed hours of work beyond 40 hours a week, Defendants only allowed Plaintiffs to "clock in" and "clock out" and to submit timesheets reflecting a total of 40 hours per week. Defendant's records regarding Plaintiffs' "clocked" hours and timesheets, thus, do not reflect the hours they actually worked.

78.    Defendants also engaged in other illegal practices including asking Plaintiffs  to revise and edit their hours to avoid documenting and paying overtime.

79.    The Defendant enforces an illegal policy prohibiting Plaintiffs from submitting timesheets that reflect their actual hours worked, thereby avoiding the obligation to pay overtime. When Plaintiffs submit timesheets showing more than 40 hours in a week, management rejects the submissions and conditions approval on reporting fewer hours than those actually worked.

80.    Plaintiffs repeatedly raised concerns with management about the excessive workload and lack of overtime compensation. In response, supervisors stated that these decisions were made by upper management and that nothing could be done.

81.    After Plaintiffs made multiple complaints, verbally and in writing, about overtime, Defendant revised its time-reporting policy, eliminating the requirement to submit timesheets.

Instead, Defendant began requiring Plaintiffs to document each provider visit—as well as their lunch breaks—in their Outlook calendars, granting supervisors access to this information.

82.    Following Plaintiffs' complaints, Defendant strictly enforced the Outlook documentation policy, requiring Plaintiffs to record even last-minute changes in their calendars. Supervisors threatened Plaintiffs with 'surprise visits' while they were working in the field.

83.    The Defendant threatened adverse employment actions against employees who raised concerns about working overtime, coercing them to work off-the-clock to fulfill job duties and responsibilities or face the risk of termination.

84.    As a result of Plaintiffs' complaints, supervisors began assigning Plaintiffs additional projects that fell under the jurisdiction of other departments.

85.    In July 2024, Mr. David Hernandez instructed the Plaintiffs to contact all their accounts, gather information, and complete a report within 24 hours.

86.    Plaintiff Emilia Issakova expressed concerns to her supervisors about the health impacts of the stress and pressure caused by the short notice and tight deadlines. She also requested more reasonable timeframes for future assignments.

87.    Plaintiff Natalie Mozammel and Plaintiff Jobed Lapointe were required to participate in daily virtual meetings, each lasting approximately an hour, while driving to visits, thereby putting their safety at risk. Despite raising these safety concerns with their supervisor, the frequency and time of these meetings were not adjusted and continued to take place daily while they were in the field driving.

88.    Shortly after Plaintiffs' complaints, during a team meeting, supervisors reiterated that attending weekend events was mandatory for Plaintiffs.

89.    Plaintiffs have suffered retaliation and the consequences of working in a hostile environment as a result of their complaints to management regarding their heavy workload and long hours without overtime compensation.

90.    Following a confidential group meeting with HR to address the concerns outlined, one of the Plaintiffs' supervisors, Mr. David Hernandez, used the confidential information shared during the meeting to intimidate those who spoke up. This breach of confidentiality caused a chilling effect on reporting workplace issues.

91.    Moreover, although Plaintiffs worked from home, supervisors informed them that upper management would no longer accept expense reports listing their home address as the starting point for mileage reimbursement.

92.    Plaintiffs were ridiculed in team meetings for complaining to HR.

93.    Specifically, Plaintiff Emilia Issakova was targeted and bullied by Mr. Hernandez, the Business Development Director. However, the harassment did not stop with Mr. Hernandez. Another supervisor, Manuel Quezada, unbuckled his belt while providing work instructions to Plaintiff Emilia Issakova at a public event.

94.    During the summer of 2024, Plaintiff Emilia Issakova made multiple complaints to HR regarding the toxic work environment and expressed concerns about feeling uncomfortable and unsafe after speaking out against her supervisors. However, her concerns were not addressed. Instead of taking action on Plaintiff's complaints, her supervisors continued to increase her workload by assigning ongoing projects unrelated to her position and imposing unreasonable deadlines to complete the assignments.

93.    During the summer of 2024, after multiple verbal complaints were ignored, Plaintiff Natalie Nieves formally filed a complaint with HR, outlining the hostile work environment and

highly stressful, unrealistic work expectations. She was forced to leave her employment due to the hostile work environment.

94.     Likewise, Plaintiff Natalie Mozammel filed an official complaint detailing how the cumulative effect of the unrealistic expectations, long hours, and the unclear reporting structure had severely impacted her mental health.

95.     Even though complaints to Human Resources should be confidential, management and supervisors embarrassed employees who complained about this conduct, including exposing their complaints during meetings in front of the entire team.

96.     As a form of punishment, the company withheld and denied reimbursements for business expenses and mileage, denied promotion opportunities, increased supervision and workload and subjected Plaintiffs to harassment and bullying.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF
## FLSA NATIONWIDE COLLECTIVE

97.     The FLSA Representatives bring the First Cause of Action, pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of themselves and all similarly situated individuals in the United States who elects to opt-in to this collective action. ("FLSA Collective")

98.     Upon information and belief, there are hundreds of other "Network Relations Consultant" that are similarly situated to the Named Plaintiffs who were denied overtime by Defendant.

99.     The FLSA Representatives represent other "Network Relations Consultant" and are acting on behalf of Defendant's "Network Relations Consultant" interests as well as their own interests in bringing this action.

100.    The FLSA Collective is defined as follows:

all non-managerial employees classified by Defendant as exempt Network Relations Consultant employed by Defendant during the covered statutory period.

101.    Defendant required the Plaintiffs, FLSA Collective and all individuals employed or formerly employed as "Network Relations Consultant" to work in excess of 40 hours per week without paying them overtime compensation at a rate of at least one and one-half times their regular hourly rate.

102.    Defendant improperly misclassified Plaintiffs, FLSA Collective and all individuals employed or formerly employed by Defendant under the job title "Network Relations Consultant" as exempt employees.

103.    Throughout the relevant period, Named Plaintiffs and the FLSA Collective have been in similar roles with comparable job requirements and pay structures. They have also been uniformly impacted by the Defendant's decisions, policies, practices, procedures, protocols, and routines, all of which have led to a willful refusal to pay the correct overtime rate of one and a half times their regular hourly wage for hours worked beyond forty (40) per week.

104.    By misclassifying Plaintiffs and the FLSA Collective as exempt employees, Defendant wrongfully deprived them of considerable owed overtime compensation.

105.    Despite working excessive overtime, Plaintiffs and the FLSA Collective were compensated at a bi-weekly fixed rate regardless of overtime hours worked.

106.    Because it was not possible to meet the job responsibilities during their regular scheduled hours, Plaintiffs and FLS Collective were forced to work beyond their regular shifts. These after-hours activities included, but were not limited to, responding to provider inquiries via calls and emails, conducting provider visits, attending events, and completing and submitting detailed reports and timesheets.

107.    Defendant was aware or should have been aware that the law required it to pay non-exempt employees, including the FLSA Representatives and the FLSA Collective, an overtime premium of one and one-half times their regular rate of pay for all work-hours Defendant suffered or permitted them to work more than 40 per workweek.

103. The FLSA Collective is readily identifiable and locatable through the use of the Defendant's records.  The FLSA Collective should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).  Unless the Court promptly issues such a notice, the FLSA Collective, who have been misclassified and unlawfully deprived of overtime pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

## CLASS ACTION ALLEGATIONS

104.    Plaintiffs and the Class are current and former employees of Defendants within the meaning of the NY Labor Law and were employed by Defendants during the applicable statutory period.

105.    Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of themselves herself and all other similarly situated individuals (the "Class" or "Class Members").

106.    The Class is defined as follows:

all non-managerial employees classified by Defendant as exempt Network Relations Consultant employed by Defendant in New York during the covered statutory period.

107.    The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendant. The hours assigned and worked, the position held, and the rates of pay for each Class Member are also determinable from Defendant's

records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided by means permissible under F.R.C.P. 23.

108.    Although the exact number and identity of Class Members are uncertain and can only be ascertained through discovery, there are more than 40 members that would make joinder of all members would be impracticable. Upon information and belief, Defendant employs hundreds of individuals for the relevant positions in New York.  The disposition of their claims as a class will benefit the parties and the Court.

109.    Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendant, as alleged herein, of improperly classifying non-exempt employees as exempt, failing to pay overtime compensation, failing to keep accurate records, failing to provide proper wage statements, and failing to provide proper wage and hour notices.

110.    Defendant's corporate-wide policies and practices affected all Class Members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class Member.

111.    Plaintiffs and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

112.    Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class.

113.    Plaintiffs are represented by attorneys who are experienced and competent in  both class  action  litigation  and  employment  litigation.

114.    Plaintiffs and Class members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where an individual plaintiff lacks the financial resources to vigorously prosecute a lawsuit in federal court against the corporate defendant.  Although the relative damages suffered by individual members of the Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

115.    Individual Class members do not have a significant interest in individually controlling the prosecution of separate actions, and the individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. Plaintiff knows of no difficulty in the management of this action that would preclude its maintenance as a class action. To the contrary, a class action in this matter will avoid case management difficulties and provide multiple benefits, including efficiency, economy of scale, unitary adjudication with consistent results, and equal protection of the rights of each Class member, all by way of the comprehensive and efficient supervision of the litigation by a single court.

116.    Defendant violated state labor laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a

degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

117.    Class Members who are not named in the Complaint have a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

118.    Further, the Class Representatives and the Class have been equally affected by Defendant's failure to pay proper wages and provide proper wage statements.

119.    The Class Representatives' claims are typical of those of the Class.  The Class Representatives and the other Class members were subjected to Defendant's policies, practices, programs, procedures, protocols and plans alleged herein concerning the failure to pay proper wages and the failure to keep adequate records.  Plaintiffs' job duties are typical of those of the class members.

120.    Further, the Class Representatives and the Class have been equally affected by Defendant's failure to pay proper wages and provide proper wage statements.

121.    This action is properly maintainable as a class action under Rule 23.

## <u>CAUSES OF ACTION</u>

**COUNT I**
**VIOLATION OF THE FLSA**
**MISSCLASIFICATION AND FAILURE TO PAY OVERTIME WAGES**
**(ON BEHALF OF PLAINTIFFS AND THE PUTATIVE FLSA NATIONWIDE**
**COLLECTIVE)**

122.    Defendants misclassified Plaintiffs, and the FLSA Collective as exempt from overtime.

123.    Plaintiffs and the FLSA Collective were paid a fixed salary regardless of hours they worked in one workweek.

124.    The FLSA, 29 U.S.C. § 207, requires employers to pay non-exempt employees

one and one-half times the regular rate of pay for all hours worked over forty (40) hours per workweek.

125.    Defendant had a policy and pattern or practice of misclassifying Plaintiffs and the FLSA Collective as nonexempt employees and requiring them routinely work in excess of forty (40) hours in a workweek without overtime compensation.

126.    "Network Relations Consultants", like Plaintiffs and the the FLSA Collective performed numerous tasks without overtime pay, including:

    a.    Completing required paperwork and computer-based reports before and after their shifts;

    b.     Holding meetings and visits with vendors and agencies, and potential vendors and agency clients, often outside of their normally scheduled work hours, such as nights and weekends;

    c.    Telephone calls with vendors and agencies;

127.    Defendants only ever paid "Network Relation Consultants" a salary based on 40 hours of work.

128.    Defendants were aware or should have been aware of all the work that Plaintiffs, Class Members and FLSA Collective performed.

129.    Defendants deducted half hour of work for each eight-hour shift to account for a meal break.  Defendants, however, deducted meal-break time even though "Network Relation Consultants", Plaintiffs, and the FLSA Collective reported to Defendants that they were unable to stop working for the entire meal break.

130.    Network Consultants performed these duties outside of their scheduled shift to meet performance standards.

131.    Defendant did not permit Plaintiffs, Class Members and FLSA Collective to report the time that they actually worked on their timesheets, rather Plaintiffs' supervisors

instructed them to complete their daily reports using their scheduled hours with one hour deducted from each eight-hour shift.

132.    Defendant did not pay Plaintiffs and FLSA Collective time and one half for all hours worked over 40 in a workweek in violation of the FLSA.

133.    Defendants' actions, policies, and practices described above violate the FLSA's overtime requirement by regularly and repeatedly failing to compensate Plaintiffs and the FLSA Collective their required overtime compensation.

134.    As the direct and proximate result of Defendant's unlawful conduct, Plaintiffs and the other similarly situated individuals have suffered and will continue to suffer a loss of income and other damages.

135.    Plaintiffs and the other similarly situated individuals are entitled to liquidated damages and attorneys' fees and costs incurred in connection with this claim.

136.    By failing to accurately record, report, and/or preserve records of hours worked Plaintiffs and FLSA Collective, Defendants have failed to make, keep, and preserve records with respect to each of their employees sufficient to determine their wages, hours, and other conditions and practice of employment, in violation of the FLSA, 29 U.S.C. § 201, *et seq*.

137.    As a direct and proximate result of Defendant's willful disregard of the FLSA, Plaintiff and Nationwide FLSA Collective are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

138.    Defendant knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by its improperly classifying Plaintiffs and FLSA Collective as exempt.

139.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).  Defendants knew or showed reckless disregard for

the fact that their compensation practices were in violation of these laws.

## COUNT II
## VIOLATION OF THE NEW YORK LABOR LAW
## (ON BEHALF OF PLAINTIFFS AND THE PUTATIVE CLASS)

140.    Plaintiffs and the putative New York Rule 23 Class restates and incorporates by reference the above paragraphs as if fully set Forth herein.

141.    At all relevant times, Plaintiffs and the putative New York Rule 23 Class were employees within the meaning of NYLL § 651(5).

142.    At all relevant times, Defendants were employers within the meaning of NYLL § 651(6).

143.    New York law requires Defendants to pay overtime compensation at a rate of not less than one and one-half times the employee's regular rate of pay for all hours worked in excess of forty hours in a workweek. 12 N.Y.C.R.R. § 142-2.2.

144.    Defendants, pursuant to their policies and practices, refused and failed to pay Plaintiffs and the members of the putative New York Rule 23 Class overtime wages for hours worked over 40 per work week.

145.    New York's overtime regulations substantially incorporate and adopt the FLSA's overtime regulations.

146.    Plaintiffs and the members of the putative New York Rule 23 Class worked more than 40 hours for Defendants in one or more workweeks within the past six years, but due to Defendants' failure to pay them for all hours worked, they did not receive overtime pay for all hours worked in violation of 12 N.Y.C.R.R. § 142-2.2.

147.    Defendants' actions were willful, and Def Defendants' actions were willful, and Defendants did not have a good faith basis to believe that their underpayment was in compliance with the law.  See NYLL § 663(1).

148.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the members of the putative New York Rule 23 Class have suffered damages in an amount to be determined at trial.

149.    Plaintiffs and the members of the putative New York Rule 23 Class seek damages in the amount of their unpaid wages, liquidated damages, pre- and post-judgment interest, reasonable attorneys' fees and costs of the action, and such other legal and equitable relief as the Court deems proper.

## COUNT III
### RETALIATION  - VIOLATION OF FLSA 29 U.S.C.A. § 215(a)(3).
### (ON BEHALF OF NAMED PLAINTIFFS)

150.    Plaintiffs restate and incorporate by reference the above paragraphs as if fully set forth herein.

151.    Plaintiffs engaged in protected activity under 29 U.S.C. § 215. Among other things, Plaintiffs raised complaints with Defendants about their violations of the Fair Labor Standards Act, including overtime violations.

152.    Defendant violated the provisions of Section 15(a)(3) of the FLSA (29 U.S.C. § 215(a)(3)), by retaliating against Plaintiffs for exercising rights protected under the Act.

153.    As a form of punishment, the company withheld and denied reimbursements for business expenses and mileage, denied promotion opportunities, increased supervision and workload and subjected Plaintiffs to harassment and bullying.

154.    These actions were causally connected to his complaint regarding overtime work.

155.    As a result of these violations by Defendant of the FLSA, the Plaintiffs are entitled to damages as set forth in the FLSA, more specifically 29 U.S.C. § 215(a)(3), in an amount to be determined at trial.

**COUNT IV**
**RETALIATION - VIOLATIONS OF NEW YORK LABOR LAW § 215**
**(ON BEHALF OF NAMED PLAINTIFFS)**

156.    Plaintiffs restate and incorporate by reference the above paragraphs as if fully set forth herein.

157.    Plaintiffs engaged in protected activity under New York Labor Law § 215. Among other things, Plaintiffs raised complaints with Defendants about their violations of New York Labor Law, including overtime violations.

158.    Defendants violated the provisions of NYLL § 215 by retaliating against Plaintiffs for exercising protected rights.

159.    As a form of punishment, the company withheld and denied reimbursements for business expenses and mileage, denied promotion opportunities, increased supervision and workload and subjected Plaintiffs to harassment and bullying.

160.    These actions were causally connected to his complaint regarding overtime work.

161.    As a result of these violations by Defendants of the FLSA, the Plaintiffs are entitled to damages as set forth in the NYLL, more specifically NYLL § 215(2), in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against the Defendant as follows. For past and future general damages on each cause of action, according to proof:

- 23 -

A.  Designation of this action as a collective action on behalf of Plaintiffs and those similarly situated, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all those similarly-situated apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual consent forms;

B.  Leave to give notice to the FLSA Collectives that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

C.  Certification of this case as a Class Action under Rule 23;

D.  Appointment of Plaintiffs as Class Representatives;

E.  Appointment of Napoli Shkolnik PLLC as Class Counsel;

F.  Unpaid overtime wages under the FLSA and NYLL;

G.  Liquidated damages;

H.  Statutory damages;

I.  For past and future mental and emotional distress, according to proof;

J.  A finding that Plaintiffs and the putative FLSA Collective are non-exempt employees entitled to protection under the FLSA;

K.  A declaratory judgment that the practices complained of are unlawful;

L.  A finding that Defendant violated the overtime provisions of the FLSA;

M.  Judgment against Defendant in the amount of Plaintiff's and the putative FLSA Collective's unpaid back wages at the applicable overtime rates;

N.   Pre-judgment and post-judgment interest, as provided by law; and

O.  For restitution, according to proof;

P.  For exemplary and punitive damages in an amount appropriate to punish and/or set an example of Defendant or is in any other way appropriate.

Q.  For past and future costs and disbursement of suit incurred herein, and attorney's fees, expert witness fees and other costs as may be allowed by law; and

R.  Granting Plaintiffs other and further relief the Court may deem just and proper.

<u>**JURY TRIAL DEMANDED**</u>

Plaintiffs demand that all issues of fact of this case be tried to a properly impaneled jury to the extent permitted under the law.

Dated: November 15, 2024

Respectfully submitted,

**NAPOLI SHKOLNIK PLLC**

By: _____

Joseph Ciaccio, Esq.
400 Broadhollow Rd #305,
Melville, NY 11747 Tel: (212)
397-1000
jciaccio@napolilaw.com
Attorneys for Respondent